IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| J. ALEXANDER INVESTMENTS, INC., )<br><br>Plaintiff, )<br>)<br>vs. )<br>)<br>PHILLIP ANDREW IRONS, MICHAEL )<br>ZAPARA, JEFFREY ULDRICKS, )<br>TRICIA CASTILLO-DE FORGE, U.S. )<br>FINANCIAL MORTGAGE CORP., JOHN )<br>DOES 1-10, JANE DOES 1-10, DOE )<br>CORPORATIONS 1-10, DOE )<br>PARTNERSHIPS 1-10, GOVERNMENTAL )<br>ENTITIES 1-10, )<br>)<br>Defendants. )<br>_____ | CIVIL NO. 08-420-HG-LEK<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR RULE 56(f) CONTINUANCE (DOC. 171) AND DENYING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF STANDING AND SUBJECT MATTER JURISDICTION (DOC. 152) AND GRANTING DEFENDANT IRONS' RENEWED MOTION FOR SUMMARY JUDGMENT ON CONTRACT CLAIMS (DOC. 156) AND GRANTING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT ON ALL TORT CLAIMS (DOC. 160)** |

PHILLIP ANDREW IRONS,

      Cross-Claimant,

  vs.

MICHAEL ZAPARA; JOHN DOES 1-10,

      Cross-Claim
      Defendants.

_____

**ORDER DENYING PLAINTIFF'S MOTION FOR RULE 56(f) CONTINUANCE (DOC. 171)**

**AND**

**DENYING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF STANDING AND SUBJECT MATTER JURISDICTION (DOC. 152)**

**AND**

**GRANTING DEFENDANT IRONS' RENEWED MOTION FOR SUMMARY JUDGMENT ON CONTRACT CLAIMS (DOC. 156)**

**AND**

**GRANTING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT ON ALL TORT CLAIMS (DOC. 160)**

This action concerns a short-term loan allegedly borrowed by Defendant, professional surfer Philip Andrew Irons ("Defendant Irons"), and James William Lull ("Mr. Lull"). Mr. Lull is not a party to this lawsuit. A Promissory Note and a Deed of Trust and Assignment of Rents to secure the loan were allegedly signed by Defendant Irons and Mr. Lull. The Deed of Trust and Assignment of Rents pertained to property located on the island of Kauai that Defendant Irons and Mr. Lull co-owned. Defendant Irons denies having any knowledge of the loan and claims that he was out of the country when the loan documents were allegedly executed by him.

Defendant Irons moves for summary judgment on all claims asserted in Plaintiff's Complaint in three separate motions entitled: (1) Motion for Summary Judgment Based on Lack of Standing and Subject Matter Jurisdiction (Doc. 152); (2) Motion for Summary Judgment on Contract Claims (Doc. 156); and (3) Motion for Summary Judgment on all Tort Claims (Doc. 160).

Plaintiff argues that questions of material fact exist

2

precluding summary judgment.  In response to Defendant Irons'
Motion for Summary Judgment on Contract Claims, Plaintiff also
argues that it needs more time for discovery and moves the Court
for a third Rule 56(f) continuance.  (1) Plaintiff's Motion for
Rule 56(f) Continuance (Doc. 171) is **DENIED**; (2) Defendant Irons'
Motion for Summary Judgment Based on Lack of Standing and Subject
Matter Jurisdiction (Doc. 152) is **DENIED**; (3) Defendant Irons'
Motion for Summary Judgment on Contract Claims (Doc. 156) is
**GRANTED**; and (4) Defendant Irons' Motion for Summary Judgment on
All Tort Claims (Doc. 160) is **GRANTED.**


## PROCEDURAL HISTORY

The relevant procedural history is as follows:

On September 18, 2008, Plaintiff, J. Alexander
Investments, Inc. ("Plaintiff") filed a Complaint against
Defendant Phillip Andrew Irons ("Defendant Irons"), Michael
Zapara ("Defendant Zapara"), and various Doe persons and
entities.  (Doc. 1.)

On November 10, 2008, Defendant Irons filed an Answer
to Plaintiff's Complaint and a Cross-claim against Defendant
Zapara. ("Answer," Doc. 7.)

On September 9, 2009, Defendant Irons filed a Motion
for Summary Judgment ("Motion," Doc. 49).

On October 16, 2009, Plaintiff filed a First Amended

3

Complaint, adding parties Tricia Castillo-DeForge, U.S. Financial Mortgage Corp., and Jeffrey Uldricks as additional Defendants. ("First Amended Complaint," Doc. 60.) On the same day, Plaintiff filed an Opposition to Defendant Irons' Motion for Summary Judgment in which Plaintiff requested a Rule 56(f) Continuance (Doc. 62).

On November 25, 2009, the Court issued an Order (Doc. 80) denying Defendant Irons' Motion for Summary Judgment and granting Plaintiffs' Motion for Rule 56(f) Continuance.

On March 5, 2010, Defendant Irons filed a Renewed Motion for Summary Judgment (Doc. 114).

On March 19, 2010, Plaintiff filed a an Opposition which the Court construed as a second Motion for Rule 56(f) Continuance (Doc. 122).

On April 21, 2010, the Court held a hearing on the Parties' Motions. At the hearing, the Court: (1) continued the trial date from August 3, 2010 to October 26, 2010; (2) maintained the discovery deadline of June 4, 2010; (3) continued the deadline for dispositive motions to July 15, 2010; (4) granted Plaintiff's second Motion for Rule 56(f) Continuance; and (5) denied Defendant Irons' Renewed Motion for Summary Judgment (Doc. 133).

On May 22, 2010, Defendant De Forge filed for Chapter 7 Bankruptcy protection. (Doc. 165).

4

On June 10, 2010, the Bankruptcy Court entered a
Stipulation and Order Granting Relief from Automatic Stay to
Defendant Irons for the sole purpose of allowing Defendant Irons
to file motions for summary judgment against the Plaintiff.
(Doc. 167, Ex. A).

On June 22, 2010, Defendant Irons filed three
dispositive motions entitled: (1) Motion for Summary Judgment
Based on Lack of Standing and Lack of Subject Matter Jurisdiction
("Standing Motion," Doc. 152); (2) Renewed Motion for Summary
Judgment on Contract Claims ("Contract Motion," Doc. 156); and
(3) Motion for Summary Judgment on all Tort Claims ("Tort
Motion," Doc. 160).  Defendant Irons also filed concise
statements of fact in support of each motion (Docs. 153, 158,
162).

On July 19, 2010, Plaintiff filed Oppositions to all
three of Defendant Irons' Motions ("Contract Opposition," Doc.
171, "Standing Opposition," Doc. 174, and "Tort Opposition," Doc.
176).  Plaintiff also filed concise statements of fact in
opposition to each motion (Docs. 172, 175, 177).  Plaintiff's
Contract Opposition also contained a third Motion for Rule 56(f)
Continuance.

On July 26, 2010, Defendant Irons filed Reply briefs in
support of all three of his Motions ("Contract Reply," Doc. 185,
"Standing Reply," Doc. 186, and "Tort Reply," Doc. 188) and

replies to Plaintiff's Concise Statements of Fact (Docs. 184, 187, 189).  On that same day, Defendant Irons filed an Errata as to his Concise Statement in Support of Contract Motion (Doc. 190).

On August 9, 2010, this matter came on for hearing and the Court ruled from the bench.  This Order memorializes the Court's August 9, 2010 ruling.

## BACKGROUND

### A.   James William Lull

This action involves a $275,000 loan allegedly borrowed by James William Lull and Defendant Irons.  Mr. Lull previously worked for co-defendant U.S. Financial Mortgage Corp ("U.S. Financial").  (See Cr. No. 08-564-SOM, Information, Doc. 1.) In September of 2008, Mr. Lull was charged with one count of wire fraud.  He waived Indictment and pled guilty to the offenses described in the Information.  According to the Information, Mr. Lull "interacted with legitimate clients of U.S. Financial," gained access to their confidential information, offered side-deal investment "opportunities" to certain clients wherein he promised guaranteed returns, and then converted the money and used it for purposes unrelated to the promised investments.  Id. Mr. Lull committed suicide in May of 2009, one day before he was to be sentenced.  (See Cr. No. 08-564-SOM, Notice, Doc. 59.)

**B.    Michael Zapara**

In March of 1999, Michael Zapara ("Defendant Zapara")
waived Indictment and pled guilty to two counts of bank fraud and
one count of tax evasion in the U.S. District Court for the
Central District of California, Cr. No. 99-00178.  Defendant
Zapara served approximately 18 months in a federal prison in
California.  On October 5, 2004, jurisdiction over Defendant
Zapara's criminal case was transferred to the District of Hawaii,
where Defendant Zapara was residing while on supervised release.
In this jurisdiction, the case number is Cr. No. 04-00378-DAE.
(See Transfer of Jurisdiction, Doc. 1.)  Defendant Zapara
continues to be on supervised release.  (See, May 7, 2010 Docket
Entry Re: Order to Show Cause Why Supervised Release Should Not
Be Revoked, Doc. 69.)

**C.    Plaintiff's Allegations**

The Plaintiff, J. Alexander Investments, Inc., is a
real estate investment company whose sole shareholder is James
Alexander ("Mr. Alexander").  (Pls. Standing Opp., Alexander
Decl. at ¶ 3.)

In December of 2005, Mr. Lull and Defendant Irons
acquired title to a piece of property located on Kauai ("the
Alamihi Property").  (See Pls. Contract Opp., Exhibit N, Dep. of
Danielle Tache at pp. 10, Doc. 136.)  Less than one month later,
in January of 2006, Mr. Lull and Defendant Zapara approached Mr.

7

Alexander about a loan that would use the Alamihi Property as security.  (Pls. Standing Opp., Alexander Decl. at ¶ 5.)  Mr. Lull represented to Mr. Alexander that he was an investor in a large scale property development project on the Island of Kauai known as "Kulana" and requested a short term bridge loan for the project in the amount of $275,000.  (Id. at ¶ 10.)

Plaintiff claims that between February of 2006 and January of 2007, Mr. Alexander participated in approximately "600 conference calls" related to the loan transaction. (Id. at ¶ 13.) According to Mr. Alexander, the conference calls were between Mr. Alexander, Mr. Lull, Defendant Zapara, Defendant Zapara's wife, and an individual who identified himself over the phone as Defendant Irons.  Id.  Mr. Alexander states that "during these conference calls...Mr. Irons and/or Mr. Lull and/or Mr. Zapara and/or Gina Zapara represented" to Mr. Alexander "that Mr. Irons and Mr. Lull were business partners and would use their real estate to secure the loan."  (Id.)

Mr. Alexander represented that in early May of 2006, Defendant Zapara faxed a Title Report to Mr. Alexander which listed Defendant Irons as a co-owner on the title to the Alamihi Property.  Based on Mr. Alexander's "review of the Title Report," which "assured [him] that both Mr. Lull and Mr. Irons were the owners of the Alamihi Property," Mr. Alexander approved the loan request.  (Id. at ¶¶ 18, 21-22.)

8

Plaintiff claims that on May 3, 2006, Mr. Lull and Defendant Irons executed a mortgage on the Alamihi Property by signing a Short Form Deed of Trust and Assignment of Rents ("Deed of Trust").[1]  On May 5, 2006, Mr. Lull and Defendant Irons allegedly executed a Promissory Note for $275,000.  Defendant Tricia Castillo-De Forge ("Defendant De Forge") allegedly notarized the loan documents.  (Id. at ¶ 28, 30.)  On May 13, 2006, Mr. Lull transferred his interest in the Alamihi Property to co-defendant Jeffrey Uldricks.  (Pls. Tort Concise Statement, Ex. A, Title Report, Doc. 176.)

On June 1, 2006, Mr. Alexander wired loan proceeds in the amount of $200,000 to an account designated by Mr. Lull. (Pls. Standing Opp., Alexander Decl at ¶ 24, Doc. 174.)  On June 27, 2006, he wired an additional $50,000 in loan proceeds to an account designated by Mr. Lull.  (Id. at 26.)  Mr. Alexander withheld the remaining $25,000 for the payment of "origination costs and prepaid interest as agreed."  (Id. at 30.)  On August 3, 2006, the Note became due and was not paid.  (First Amended Compl. at ¶ 38.)

On September 18, 2008, Plaintiff filed this action asserting claims for negligence (Count I), misrepresentation (Count II), fraud (Count III), breach of contract (Count IV),

---

[1]The Short Form Deed of Trust and Assignment of Rents and the Promissory Note are collectively referred to throughout this Order as "the loan documents."

promissory estoppel (Count V), unjust enrichment (Count VI), and conversion (Count VII).  Plaintiff did not name Mr. Lull or Mr. Lull's estate as co-defendants.

### D.  Undisputed Facts

According to the records before the Court, a limited liability company by the name of Kapaa 382, LLC was responsible for developing the Kulana project discussed above.  (Def. Contract Concise Statement at 9, Ex. 10, Kulana Condominium Public Report, Doc. 158.)  An entity named Kauai Lease and Loan, Inc. owned Kapaa 382, LLC.  (Id. at 10, Ex. 11, Kapaa 382 LLC Articles of Incorporation.)  The managers and officers of both Kapaa 382, LLC and Kauai Lease and Loan, Inc. were James Lull and William Hancock.  (Id; Ex. 13, Kauai Lease and Loan, Ltd. Articles of Inc.)

Defendant Irons' mother, Danielle Tache, and his father, Philip Irons Senior, held a power of attorney from Defendant Irons prior to and during the period of time that the loan was negotiated and made in 2006.  (Def. Contract Motion, Decl. of Defendant Irons at ¶ 3, Decl. of Philip Irons at ¶ 1, Decl. of Danielle Tache at ¶ 1, Doc. 168.)

Defendant Irons and his parents had become acquainted with Mr. Lull in 2000 when Defendant Irons sought a construction loan and mortgage through U.S. Financial, Mr. Lull's former employer.  (See Pls. Contract Opp., Exhibit N, Dep. of Danielle

Tache at pp. 10, Doc. 136.)  Ms. Tache testified at her deposition that after becoming acquainted with Mr. Lull through U.S. Financial, she loaned him money on behalf of her son on a few occasions, and Mr. Lull always repaid the loans with interest.  (Id.)

In December of 2005, Mr. Lull approached Defendant Irons' parents and inquired as to whether Defendant Irons would be interested in jointly owning the Alamihi Property discussed above.  (Id.)  At his deposition, Defendant Irons testified that he did not remember how or when he acquired an interest in the Alamihi Property.  (Pls. Contract Opp., Ex. K, Dep. of Defendant Irons at pp. 12-14, Doc. 136.)  Defendant Irons' mother testified at her deposition that Mr. Lull approached Defendant Irons about the Property, Defendant Irons went and visited the property, and Defendant Irons later "use[d] some money that was already with Jim Lull and add[ed] more money to procure half of the property." (Pls. Concise Statement, Ex. L, Dep. of Danielle Tache at pp. 12-13.)  Mr. Lull and Defendant Irons acquired title to the Alamihi Property on December 7, 2005.  (Pls. Tort Concise Statement, Ex. A, Title Report, Doc. 176.)

**The Loan Transaction:**

The following facts are supported by documentary evidence submitted by Defendant Irons, as well as the declarations and deposition testimony of Defendant Irons, his

parents, and other witnesses.  Plaintiff has submitted no evidence that contradicts or raises a genuine issue of material fact as to the validity of the following matters:

     1.  Defendant Irons had no recorded interest in the Kulana project, or in Kapaa 382, LLC or Kauai Lease and Loan, Inc, the alleged reason for the loan.  Irons denies any involvement in the Kulana project or in either of the affiliated entities.  (Irons Decl. at 10-11, Doc. 168.)

     2.  On the dates when the loan documents were allegedly signed and notarized, Defendant Irons was competing in the Billabong Pro Surf Competition in Tahiti.  Defendant Irons has submitted the declarations of himself, his father, and that of Renato Hinkel, tour manager of the Billabong Pro Surf Competition, all of which support this fact.  (See Decl. of Def. Irons at ¶ 3-9; Decl. of Irons Senior at ¶ 4-6; Decl. of Hinkel at ¶ ¶ 1-4, Doc. 168.)  Mr. Hinkel's affidavit states that Defendant Irons was photographed in Tahiti at the Billabong Pro Surf Competition on May 4, 2006 by Kirstin Scholtz, which photograph is kept as part of the competition's business records, and that he personally saw Defendant Irons at the competition. Declaration of Renato Hinkel at ¶¶ 1-4.)  Attached to Defendant Irons' Concise Statement of Fact is a copy of the Passenger Activity Report generated by U.S. Customs and Border Patrol, confirming that Defendant Irons returned from Tahiti and passed

through U.S. Customs on May 14, 2006.  (Def. Contract Concise
Statement, Ex. 6, Passenger Activity Report, Doc. 158.)

     3.  The loan proceeds originated from the personal
account of Mr. Alexander and were wired to the personal account
of Mr. Lull.  (Id. at Ex. 15, City National Bank Wire Transfer
Requests.)  Defendant Irons denies receiving any proceeds from
the loan or benefitting from the transaction in any way.  (Irons
Decl. at ¶ 10-11.)

     4.  Defendant Irons denies signing the loan documents.
(Id. at ¶¶ 1, 2, 7.)  Defendant Irons' parents also deny signing
the loan documents on their son's behalf, or authorizing anyone
else to do so.  (Irons Sr. Decl. at ¶ 3; Tache Decl. at ¶ 1-4,
Doc. 168.)

     5.  At her deposition, Notary Defendant De Forge
asserted her Fifth Amendment Right against self incrimination and
refused to authenticate her signature, seal, and notarial
acknowledgment on the loan documents.  She also refused to
identify anyone who was present during the signing, or who
actually signed, the loan documents.  (Def. Contract Concise
Statement, Ex. 7, De Forge Dep. at pp. 9-13, Doc. 158.)  There is
no entry in Defendant De Forge's official notary record book
regarding the loan transaction, or any entry in May of 2006
involving Defendant Irons.  (Id.)

     6.  The call records submitted by Defendant Irons show

that the telephone calls in which Mr. Alexander participated were placed by Mr. Alexander to telephone numbers that do not belong to Defendant Irons. (Def. Tort Concise Statement, Ex. 7, Call Records, Doc. 162.) Mr. Alexander also testified at his deposition that he had never met Irons and had no prior experience with Defendant Irons from which to identify his voice. (Id. at Ex. 1, Alexander Dep. at pp. 9, 26.)

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To defeat summary judgment there must be sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. Nidds v. Schindler Elevator Corp., 113 F.3d 912, 916 (9th Cir. 1997).

The moving party has the initial burden of "identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party, however, has no burden to negate or disprove matters on which the opponent will have the burden of proof at trial. The moving party need not produce any

14

evidence at all on matters for which it does not have the burden of proof. Celotex, 477 U.S. at 325. The moving party must show, however, that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. That burden is met by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. Id.

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of probative evidence tending to support its legal theory. Commodity Futures Trading Comm'n v. Savage, 611 F.2d 270, 282 (9th Cir. 1979). The opposing party must present admissible evidence showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Nidds, 113 F.3d at 916 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).

The court views the facts in the light most favorable to the non-moving party. State Farm Fire & Casualty Co. v. Martin, 872 F.2d 319, 320 (9th Cir. 1989). Opposition evidence may consist of declarations, admissions, evidence obtained through discovery, and matters judicially noticed. Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324. The opposing party cannot, however, stand on its pleadings or simply assert that it will be able to discredit the

movant's evidence at trial. Fed.R.Civ.P. 56(e); T.W. Elec. Serv., 809 F.2d at 630. The opposing party cannot rest on mere allegations or denials. Fed. R. Civ. P. 56(e); Gasaway v. Northwestern Mut. Life Ins. Co., 26 F.3d 957, 959-60 (9th Cir. 1994). Nor can the opposing party rest on conclusory statements. National Steel Corp. v. Golden Eagle Ins. Co., 121 F.3d 496, 502 (9th Cir. 1997).


## ANALYSIS

**I.   Plaintiff's Motion for Rule 56(f) Continuance (Doc. 171)**

In opposing Defendant Irons' Contract Motion, Plaintiff moves for a Rule 56(f) continuance.  Rule 56(f) states that if a party opposing a motion for summary judgment "shows by affidavit that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) deny the motion; (2) order a continuance to enable affidavits to be obtained, depositions to be taken, or other discovery to be undertaken; or (3) issue any other just order."  Fed. R. Civ. P. 56(f).  To prevail under this Rule, the party opposing a motion for summary judgment must make a timely application which "specifically identifies relevant information where there is some basis for believing that the information sought actually exists." Employers Teamsters Local Nos. 175 and 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004).

In support of Plaintiff's motion for a continuance, Plaintiff's counsel's Declaration states that "it is impossible

16

to state specific facts essential to justify the opposition against Irons," and cites the failure by Defendants Zapara and De Forge to respond to discovery requests.  (Pls. Contract Opp. at pp. 22-24.)  Plaintiff also states that it "has not had the time to properly investigate this matter or to fully defend the case." (Id.)

Counsel's declaration is insufficient to satisfy the requirements of Rule 56(f).  The declaration does not "specifically identify relevant information" and explain why Plaintiff believes the information or evidence exists.  This case has been pending since September of 2008.  The Court has granted two prior Rule 56(f) Motions made by the Plaintiff.  Plaintiff has participated in the depositions of Defendant Irons, his parents, Defendant De Forge, Mr. Alexander, and Renato Hinkel. It has had two years to take the depositions of Defendant Zapara and any other co-defendant or pertinent witness, and to compel discovery responses from Defendants Zapara and De Forge. Plaintiff has had ample time to acquire evidence that would prove its theory of the case.

Plaintiff's claim that discovery was stayed by Defendant De Forge's bankruptcy petition is also unpersuasive. The Ninth Circuit Court of Appeals has held that where discovery requests pertain to claims against a non-debtor co-defendant in a multi-defendant case, an automatic bankruptcy stay does not protect the debtor from complying with the discovery requests.

In re Miller, 262 B.R. 499, 504-505 (9th Cir. 2001).  The
discovery deadline in this case was June 4, 2010.  Defendant De
Forge filed her bankruptcy petition on May 22, 2010, less than
two weeks earlier.  Plaintiff had almost two years to obtain
Defendant De Forge's discovery responses or to compel them prior
to the bankruptcy filing.  After the filing, Plaintiff could have
propounded discovery that related only to Defendant Irons, per
the court's holding in In re Miller.

Plaintiff has not satisfied the standards of Rule
56(f).  Plaintiff's third Motion for Rule 56(f) Continuance (Doc.
171) is **DENIED**.

## II.  Defendant Irons' Motion for Summary Judgment Based on Lack of Standing and Subject Matter Jurisdiction (Doc. 152)

Defendant Irons argues that the Court does not have
subject matter jurisdiction because the Plaintiff does not have
standing to bring this case.  According to Defendant Irons, the
real party in interest is the owner and sole shareholder of the
Plaintiff company, Mr. Alexander.

To have standing, a plaintiff must satisfy Article
III's "case or controversy" requirement and have "a personal
stake in the outcome of the controversy."  In re Cannon, 277 F.3d
838, 852 (6th Cir. 2002).  To satisfy the case or controversy
requirement, a plaintiff must show that: (1) it has suffered an
injury in fact that is concrete and particularized; (2) the
injury is fairly traceable to the challenged action of the

18

defendant; and (3) it is likely that the injury will be redressed by a favorable decision.  Cetacean Comm. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004).

In support of his argument that Plaintiff lacks standing, Defendant Irons argues that Mr. Alexander, not the Plaintiff company, suffered the "injury in fact" in this case. Defendant Irons cites the deposition testimony of Mr. Alexander, who stated that: (1) the loan "was not a company transaction;" (2) he himself was "putting up the money, not the company;" and (3) the loan was his personal asset.  (Def. Standing Concise Statement, ¶ 14-16, Doc. 153.)  The company's tax returns for 2006 and 2007 do not list the loan as an asset of the company.

In its Opposition, Plaintiff states that the Plaintiff company is the real party in interest.  The loan documents name the Plaintiff company as the party in whose favor the documents were drafted.  Plaintiff has submitted two "Memos of Record," dated June 1, 2006, and June 27, 2006, respectively, which state that "As a convenience to J. Alexander Investments, Inc., James Alexander agrees to wire funds in the amount of $200,000[/$50,000] to James W. Lull on behalf of the Company..." (Pls. Standing Opposition, Ex. G & H, Doc. 176)(emphasis added).

Based on these documents, and viewing the evidence in the light most favorable to the Plaintiff, the Plaintiff company suffered an injury in fact and has standing to bring this lawsuit.  The loan documents state that the debt was owned by the

19

Plaintiff company, and the Memos of Record clarify that Mr. Alexander wired the funds "on behalf of the Company." These documents are sufficient to establish that Plaintiff has standing.

In its Reply, Defendant Irons argues that Exhibits A, F and O attached to Plaintiff's Opposition are improperly authenticated and should not be considered by the Court. The Exhibits are not relevant to, and were not considered in determining, that the Plaintiff has standing. The Court, therefore, need not decide whether they are properly authenticated.

Defendant Irons' Motion for Summary Judgment Based on Lack of Standing and Lack of Subject Matter Jurisdiction (Doc. 152) is **DENIED.**

## III. Defendant Irons' Renewed Motion for Summary Judgment on Contract Claims (Doc. 156) and Defendant Irons' Motion for Summary Judgment on Tort Claims (Doc. 160)

Defendant Irons moves for summary judgment on all counts of the Complaint. In his Motion for Summary Judgment on Tort Claims (Doc. 160), Defendant Irons moves for summary judgment on Plaintiff's claims for negligence (Count I), misrepresentation (Count II), fraud (Count III), and conversion (Count VII). In his Renewed Motion for Summary Judgment on Contract Claims, Defendant Irons moves for summary judgment on Plaintiff's claims for breach of contract (Count IV), promissory

estoppel (Count V), and unjust enrichment (Count VI).

### A.    Plaintiff's Tort-Based Claims

#### 1.    Defendant Irons is Not Liable for Negligence (Count I)

Plaintiff's Opposition does not: (1) address Plaintiff's negligence claim; (2) explain what duty Defendant Irons owed to the Plaintiff or how Defendant Irons breached that duty; or (3) present any evidence in support of its negligence claim.

#### 2.    Plaintiff Has Failed to Show that Defendant Irons Made a Representation to Plaintiff Such that He Could Be Held Liable for Misrepresentation (Count II) or Fraud (Count III)

Claims for misrepresentation, negligent misrepresentation, and fraud all require a showing that Defendant Irons made a representation to the Plaintiff.[2]  The only evidence

---

[2]    To state a claim for intentional misrepresentation, a Plaintiff must show: (1) Defendant Irons made false representations; (2) with knowledge of their falsity; (3) in contemplation of Plaintiff's reliance upon these false representations; and (4) that Plaintiff did in fact rely on them. Shoppe v. Gucci Am., Inc., 94 Haw. 368, 386 (Haw. 2000).
A claim for negligent misrepresentation is virtually identical to a claim for intentional misrepresentation, "except the second prong does not require knowledge of the falsity, but rather, the absence of a reasonable ground for believing the statement to be true." Boskoff v. Yano, 57 F.Supp.2d 994, 1002 (D. Haw. 1998).  A fraud claim similarly requires a showing that: (1) Defendant Irons made a representation of material fact;(2) for the purpose of inducing the Plaintiff to act; (3) which Defendant Irons knew to be false but Plaintiff reasonably believed it to be true; and (4) Plaintiff reasonably relied on the representation to its detriment.  Matsuura v. E.I. du Pont de Nemours and Co., 102 Haw. 149, 163 (2003).

cited by the Plaintiff in support of its misrepresentation and fraud claims is Defendant Irons' alleged self-identification in conference calls with Mr. Alexander.  This evidence is inadmissible.

With respect to any outgoing telephone calls (i.e. calls from Mr. Alexander to Mr. Lull and a person he believed to be Defendant Irons), authentication of a telephone conversation may be made "...by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if: (A) in the case of a person, circumstances, including self-identification, show the person answering to be the one called..."  Fed. R. Evid. 901(b)(6).

Here, there is no evidence that any calls went to a phone number that belonged to Defendant Irons, and Defendant Irons has expressly denied that any of the numbers on the list of calls produced by Mr. Alexander at his deposition belonged to Defendant Irons.  (Def. Tort Concise Statement, Ex. 7, Call List, Doc. 162; Decl. Def. Irons at ¶ 16.)

As to any incoming calls (i.e. calls from an outside person to Mr. Alexander), it is well-established that self-identification by a speaker alone is never sufficient authentication.  U.S. v. Puerta Restrepo, 814 F.2d 1236, 1239 (7th Cir. 1987); U.S. v. Alicea-Cardoza, 132 F.3d 1, 4-5 (1st Cir. 1997); U.S. v. Ross, 321 F.2d 61, 69 (2d Cir. 1963); U.S. v. Pool, 660 F.2d 547, 560 (5th Cir. 1981); see also, FRE 901 Adv.

Comm. Note (b), Ex. 6 (stating: "The cases are in agreement that a mere assertion of his identity by a person talking on the telephone is not sufficient evidence of the authenticity of the conversation and that additional evidence of his identity is required.")  Only when there are additional circumstances confirming the identity of the caller, will self-identification be sufficient.  This circumstantial evidence "must establish that it was improbable that anyone other than the defendant was the caller before there is sufficient proof of the defendant's identity as the caller."  <u>Zuch v. Hussey</u>, 366 F.Supp 553, 558 (D. Mich. 1973)(citing <u>Van Riper v. U.S.</u>, 13 F.2d 961 (2d Cir. 1926)).

Here, there is no circumstantial evidence establishing that it was probable that Defendant Irons called Mr. Alexander. Mr. Alexander's testimony about Defendant Irons' participation in the conference calls is not corroborated by any other witness. Defendant Irons' participation in the calls has in fact been denied by one of the conference call participants identified by the Plaintiff.  In his Declaration, Defendant Zapara states that during the months of April and May of 2006, he worked in the Plaintiff's California office and "participated in most of the oral and written communications between Mr. Lull and Mr. Alexander's office concerning the loan."  (Def. Tort Concise Statement, Zapara Dep. at ¶ 1, Doc. 162.)  Defendant Zapara further states that: (1) he "never spoke to or communicated with

Andy Irons or heard of his participation in the loan from Mr.
Alexander;" and (2) "Mr. Irons did not take part in any
communications between/with Mr. Lull, Mr. Alexander...and
[Defendant Zapara]," or communicate with Mr. Alexander, Mr. Lull,
or Defendant Zapara, in any way.  (Id. at ¶¶ 3-4.)

There is no evidence that Defendant Irons received, or
stood to benefit from, the loan proceeds.  It is undisputed that
the proceeds went by wire transfer from Mr. Alexander's personal
account directly to an account designated by Mr. Lull.  The
documentary evidence shows that Defendant Irons had no interest
in the Kulana project, or in any of the affiliated entities,
which were the alleged reasons for the loan.  Mr. Alexander's
unsupported allegations that Defendant Irons participated in the
telephone loan negotiations are not admissible pursuant to Fed.
R. Evid. 901(b)(6).  All admissible evidence supports a lack of
connection between Defendant Irons and the loan transaction.

### 3. Defendant Irons Cannot Be Liable for Conversion Where He Did Not Receive the Loan Proceeds (Count VII)

As stated above, the documentary evidence establishes
that the loan proceeds were wired from Mr. Alexander's personal
account to an account designated by Mr. Lull.  Plaintiff has not
presented any evidence that Defendant Irons received any of the
loan proceeds, such that he could be liable for conversion (Count
VII).  Defendant Irons' Motion for Summary Judgment on all Tort
Claims (Doc. 160) is **GRANTED**.

24

B.    **Plaintiff's Contract-Based Claims**

1.    **Defendant Irons is Not Liable for Breach of Contract (Count IV)**

Plaintiff argues that the purported notarization of Defendant Irons' signature is sufficient to "present[] a prima facie claim that Defendant Irons executed the loan documents and is therefore liable for the amount outstanding."

Under H.R.S. § 490:3-308(a), where the validity of a signature on a loan instrument is denied in the pleadings, the plaintiff has the burden of establishing validity.  H.R.S. § 490:3-308(a).  Defendant Irons denied in his Answer that the signatures on the loan documents are his.  He also submitted evidence, in the form of declarations, deposition testimony, and business records as described above, which support his assertion that he was in Tahiti when the loan documents were signed and that the notarization is invalid.  In the face of this evidence, the burden shifted to the Plaintiff to present evidence that the signature on the loan documents is valid.  H.R.S. § 490:3-308(a). The Plaintiff has failed to present any evidence to support its position.

Plaintiff also has not presented any evidence that Defendant Irons was aware of the loan, or that Mr. Lull "represented" Defendant Irons in the transaction, such that Defendant Irons could be liable on an agency theory of

25

liability.[3]

        **2.    Defendant Irons is Not Liable for Promissory
Estoppel (Count V) and Unjust Enrichment (Count
VI)**

      Plaintiff argues that the fact that Mr. Lull and
Defendant Irons jointly owned the Alamihi Property creates a
question of fact as to whether Defendant Irons benefitted from
the loan transaction.  Plaintiff, however, lumps Defendant Irons'
acquisition of the Alamihi Property and the loan transaction
together into one transaction, stating: "[c]urrently, Irons holds
a half interest of the Alamihi Property which is contradictory to
the arguments Irons has made that he had no involvement in this
transaction and/or benefitted from the transaction."

      The loan at issue did not fund Defendant Irons and Mr.
Lull's acquisition of the Alamihi Property.  Defendant Irons and
Mr. Lull acquired the Alamihi Property in December of 2005.  The

---

      [3]     "An agency relationship may be created through actual
or apparent authority." <u>Cho Mark Oriental Food, Ltd. v. K & K
Int'l</u>, 836 P.2d 1057, 1061 (1992).  Actual authority exists only
if there has been a manifestation by the principal to the agent
that the agent may act on the principal's behalf.  <u>State Farm
Fire & Cas. Co. v. Pacific Rent-All, Inc.</u>, 978 P.2d 753, 763
(Haw. 1999).  Apparent authority arises when: (1) the principal
has manifested his consent to the exercise of the agent's
authority or has knowingly permitted the agent to assume the
exercise of such authority; (2) the relying party knew of the
principal's actions and, acting in good faith, had reason to
believe and did actually believe that the agent possessed such
authority; and (3) the relying party "has changed his position"
after relying on the appearance of authority, "and will be
injured or suffer loss if the act done or transaction executed by
the agent does not bind the principal." <u>Cho Mark Oriental Food</u>
at 836 P.2d at 1062.

loan transaction at issue was consummated five months later in May of 2006.  Plaintiff has not submitted any evidence that would support a conclusion that: (1) Defendant Irons communicated with the Plaintiff, such that he could have made a "promise" for purposes of promissory estoppel; or (2) that he received any of the loan proceeds, such that he could be liable for unjust enrichment.

## CONCLUSION

Plaintiff has not satisfied the requirements of Rule 56(f) and is not entitled to a third Rule 56(f) continuance. Plaintiff's Motion for Rule 56(f) Continuance (Doc. 171) is **DENIED**.

The documents created in connection with the loan establish that the Plaintiff company was the entity to be repaid. Plaintiff has standing to pursue its claims.  Defendant Irons' Motion for Summary Judgment Based on Lack of Standing and Subject Matter Jurisdiction (Doc. 152) is **DENIED**.

As to Plaintiff's contract and tort claims, Plaintiff has not submitted any evidence that Defendant Irons: (1) signed the loan documents, or authorized anyone else so on his behalf; (2) communicated with the Plaintiff regarding the loan; (3) had any knowledge of or participated the loan transaction; or (4) benefitted from the loan proceeds in any way.  Defendant Irons' Renewed Motion for Summary Judgment on Contract Claims (Doc. 156)

27

and Motion for Summary Judgment on Plaintiff's Tort Claims (Doc. 160) are **GRANTED**.

There are no remaining claims against Defendant Irons.  All other proceedings remain stayed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 25, 2010.



/S/ Helen Gillmor
_____
Helen Gillmor
United States District Judge

_____

J. ALEXANDER INVESTMENTS, INC. V. PHILIP ANDREW IRONS, ET AL., CIVIL NO. 08-00420-HG-LEK; **ORDER DENYING PLAINTIFF'S MOTION FOR RULE 56(f) CONTINUANCE (DOC. 171) AND DENYING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT BASED ON LACK OF STANDING AND SUBJECT MATTER JURISDICTION (DOC. 152) AND GRANTING DEFENDANT IRONS' RENEWED MOTION FOR SUMMARY JUDGMENT ON CONTRACT CLAIMS (DOC. 156) AND GRANTING DEFENDANT IRONS' MOTION FOR SUMMARY JUDGMENT ON ALL TORT CLAIMS (DOC. 160)**